UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TANYA R.,

             Plaintiff,                      **DECISION AND ORDER**

        v.                                      1:20-CV-00262 EAW

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.
_____

## INTRODUCTION

Represented by counsel, plaintiff Tanya R. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 16; Dkt. 20), and Plaintiff's reply (Dkt. 21). For the reasons discussed below, the Commissioner's motion (Dkt. 20) is granted and Plaintiff's motion (Dkt. 16) is denied.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on December 23, 2013. (Dkt. 10 at 185-193).[1] In her applications, Plaintiff alleged disability beginning July 15, 2013, due to bulging discs in her lower back and spinal stenosis. (*Id.* at 75, 83, 185, 188). Plaintiff's applications were initially denied on April 11, 2014. (*Id.* at 75-90). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Lisa B. Martin on December 9, 2015, who issued an unfavorable decision on February 16, 2016. (*Id.* at 27-37). Following a denial of review by the Appeals Council, Plaintiff sought review in this Court and the matter was remanded for further proceedings on August 16, 2018, *Tanya R. v. Cmm'r*, 1:17-CV-566-HBS. (*Id.* at 867-68). On February 15, 2019, the Appeals Council remanded the case to the ALJ. (*Id.* at 861-64).

On July 8, 2019, a second hearing was held before ALJ Roxanne Fuller, with Plaintiff appearing in Buffalo, New York, and the ALJ presiding over the hearing from Falls Church, Virginia. (*Id.* at 870-888). On April 19, 2018, the ALJ issued an unfavorable decision. (*Id.* at 834-850). After 60 days, the ALJ's determination became the Commissioner's final decision. *See Marchand v. Comm'r of Soc. Sec.*, No. 17-CV-3252 (ENV), 2017 WL 2633511, at *2 (E.D.N.Y. June 14, 2017) ("[W]here, as here, the case has been remanded from federal court, the ALJ's subsequent decision on remand becomes the 'final decision' of the Commissioner unless the Appeals Council assumes jurisdiction

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

of the case within 60 days after the ALJ's decision is issued." (quoting 42 U.S.C. §§ 404.984(d), 416.1484(d)).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

### II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant

is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein

the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2017. (Dkt. 10 at 836). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since July 15, 2013, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of multilevel degenerative disc disease, degenerative joint disease of the left shoulder, migraines, chronic obstructive pulmonary disease (COPD), obesity, and depression. (*Id.* at 837).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the requirements of Listings 1.04, 1.02, 12.04, and Plaintiff's obesity in reaching this conclusion. (*Id.* at 837-840).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following additional non-exertional limitations:

> Occasional climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasional balance stoop, crouch, kneel, crawl; frequent reaching overhead with the left non-dominant arm; frequent but not constant handling objects and fingering with the left non-dominant hand; no exposure to extreme cold, extreme heat; occasional exposure to irritants such as fumes, odors, dust, and gases; occasional exposure to poorly ventilated areas; occasional exposure to chemicals; no exposure to moving mechanical parts; no operating motor vehicle; no exposure to unprotected heights; able to change positions for one to two minutes every thirty minutes; able to perform routine and repetitive tasks; limited to work in a low stress job defined as no fast-paced production-line work; and only occasional interaction with the public.

(*Id.* at 840).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 848).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of lens inserter, eyeglass frames polisher, and final assembler. (*Id.* at 849-50). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from the alleged onset date through the date of the ALJ's decision. (*Id.* at 850).

II. **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing: (1) the ALJ failed to fully develop the record with mental medical

opinion evidence; and (2) the ALJ failed to properly consider treating physician opinion evidence. (Dkt. 16-1 at 15-22). The Court has considered these arguments and, for the reasons discussed below, finds them to be without merit.

> **A.    The ALJ Relied on Competent Medical Evidence and Fully Developed the Record**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.' This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

In addition, "because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must

"investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). "The ALJ's duty to develop the record applies to both *pro se* and represented parties[.]." *Lopez v. Comm'r of Soc. Sec.*, No. 17-CV-1504(KAM), 2018 WL 5634929, at *5 (E.D.N.Y. Oct. 31, 2018). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information. . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

In this case, Plaintiff argues that the ALJ decided the mental RFC without the benefit of any medical opinion evidence and failed to fully develop the record and obtain any as she should have done.

In her decision, the ALJ addressed Plaintiff's mental impairments in connection with an assessment of Listing 12.04 (Dkt. 10 at 838-39), as well as in her determination of Plaintiff's RFC (*id.* at 845-46). She noted that Plaintiff sought treatment for depression at a county clinic facility with Richard Caton, LCSW. (*Id.* at 845). The ALJ considered the treatment notes from Plaintiff's monthly visits with Mr. Caton from February 2015 through October 2016. At a November 18, 2016 depression screening, Plaintiff received a score

which indicated moderately severe depression. The ALJ noted there was a 20-month gap in psychotherapy treatment following Plaintiff's October 2016 visit with Mr. Caton until she returned for treatment with him in June of 2018 and continued until October of 2018. (*Id.* at 845-46). The ALJ noted that in March of 2019, Plaintiff began psychotherapy with Amanda Kastelic, LCSW, and saw Ms. Kastelic in April and May of 2019 as well.

In describing Plaintiff's mental health limitations, the ALJ stated:

> [Plaintiff] attended psychotherapy but had multiple gaps in treatment, and she spent most of her treatment talking about family stressors, rather than issues requiring additional treatment. Further, she received a prescription for Zoloft from her primary care physician (Ex. 26F/9). However, with regard to mental impairments, I acknowledge that [Plaintiff] does have some residual depressive symptoms from her mental disorder. Therefore, I have accommodated [Plaintiff's] stress limitations caused by these symptoms by limiting her to the performance of routine and repetitive tasks. This limitation was given to [Plaintiff] because of the increased likelihood of [Plaintiff's] negative intrusive thoughts manifesting themselves if [Plaintiff] had to carry out complex tasks on a sustained basis with frequent changes in the work setting. The record also supports that [Plaintiff's] mental impairments limits her to occasional interaction with others. Due to the unpredictable nature of other people and [Plaintiff's] diagnosed disorder, negative intrusive thoughts would also likely occur if [Plaintiff] had to interact frequently with supervisors, co-workers, and the general public on a sustained basis.

(*Id.* at 846).

Plaintiff argues that the ALJ was not empowered to interpret raw medical data in crafting the RFC. Notably, this was not a case where the ALJ rejected medical opinion evidence of record contrary to the RFC, but rather, the record lacked any such opinion evidence relating to Plaintiff's mental impairments. But the lack of opinion evidence alone does not necessarily direct remand, as Plaintiff contends. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020) ("[A]lthough there was no medical opinion

providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.' . . . Here, the treatment notes were in line with the ALJ's RFC determinations.") (summary order); *Corbiere v. Berryhill,* 760 F. App'x 54, 56 (2d Cir. 2019) (affirming Commissioner's decision relying on treatment notes to formulate RFC despite lack of medical opinion expressly discussing plaintiff's physical limitations) (summary order); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," a medical source statement or formal medical opinion is not necessarily required[.]") (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x. 29, 34 (2d Cir. 2013)) (summary order).

Here, the ALJ expressly addressed Plaintiff's mental health treatment records and noted that Plaintiff did not provide any additional or recent medical evidence of mental health treatment, nor has Plaintiff identified any such records to the Court that the ALJ did not consider or improperly rejected. In addition, the ALJ provided a sufficient explanation for her determination that Plaintiff's mental health limitations were managed by medication and therapy and explained the evidentiary bases for her determination of Plaintiff's RFC. The absence of additional opinion evidence as to Plaintiff's mental impairments does not appear to be the result of an "obvious gap" in the record needing to be filled. *See Reithel v. Comm'r of Soc. Sec.*, No. 6:17-CV-06209 EAW, 330 F. Supp. 3d 904, 912 (W.D.N.Y. 2018) ("[T]he [ALJ] need only re-contact sources or obtain additional information where there is a conflict or ambiguity that must be resolved but that cannot be resolved based on

the evidence present in the record.") (quotation and citation omitted). The Court concludes that the ALJ was not required to further develop the record in this case, because the evidence of record was "adequate to permit the ALJ to make a disability determination." *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010). The ALJ had adequate evidence in the record from which she could and did properly assess Plaintiff's RFC. Accordingly, neither reversal nor remand is warranted.

### B. Weighing of Treating Physician Opinions

Plaintiff's second argument is that the ALJ erred in evaluating the opinions offered by two of her treating physicians. (Dkt. 16-1 at 19-22). Plaintiff argues that the ALJ improperly assessed the opinions of examining physician John Hoffman, M.D., and treating physician Emily Queenan, M.D.

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the

>Social Security Administration's attention that tend to support or contradict the opinion.

*Id.* An ALJ's failure to explicitly apply the requisite factors is a "procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted). However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed." *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416927(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific . . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

Dr. Hoffman opined that Plaintiff was limited to lifting no more than 10 pounds and must avoid bending, stooping, and prolonged standing, but concluded that she was not expected to have a severe impairment exceeding 12 months. (Dkt. 10 at 449-450). Dr. Hoffman also opined that Plaintiff was moderately limited in walking, sitting, pushing, pulling, and bending, and very limited in standing and lifting and carrying. (*Id.*). Similarly, Dr. Queenan opined that Plaintiff was unable to lift more than 5 pounds or engage in prolonged standing or sitting. (*Id.* at 542-45). Dr. Queenan further opined that Plaintiff was very limited in walking, standing, sitting, lifting or carrying, pushing, pulling, or

bending, and using stairs or climbing, moderately limited in using her hands, or walk distances greater than 50 feet. (*Id.*). The ALJ gave these opinions little weight, explaining:

> While the [Plaintiff's] history of lower back pain causes postural limitations, there is no objective evidence that the [Plaintiff's] impairments would preclude all bending or stooping.  At the consultative physical examination, she could walk on her heels and toes without difficulty, squat 50 percent of full, needed no help changing for the exam or getting on and off the exam table, and was able to rise from chair without difficulty. (Ex. 5F/3). As such, I limited the [Plaintiff] to sedentary work with occasional climb ramps or stairs; never climb ladders, ropes or scaffolds; and occasional balance stoop, crouch, kneel, and crawl.  Furthermore, the opinion asserts that the claimant's impairment did not persist for a period of 12 months or longer.  Yet, the record shows that the claimant has received consistent treatment for her impairments, since her alleged onset date (Exs. 1F; 4F; 17F).

(*Id.* at 847-48).  Plaintiff contends that the ALJ failed to apply the treating physician rule when she ignored certain sections of Dr. Hoffman and Dr. Queenan's opinions and limited her discussion to only the portions of their opinions addressing bending and stooping.

Importantly, Plaintiff does not identify any portions of the opinions of either physician that would support a finding of disability.  Rather, she contends that the ALJ failed to explicitly provide good reasons for not giving the opinions more weight and that such failure warrants remand.  The Court disagrees.

After carefully reviewing the relevant evidence in the record, including the opinions offered by Dr. Hoffman and Dr. Queenan, as well as the written determination, the Court finds that the ALJ's assessment of these opinions is supported by the record.  First, a searching review of the record confirms that the ALJ properly applied the appropriate factors when assessing the opinions of Dr. Hoffman and Dr. Queenan, including their treating relationship with Plaintiff, their specialty, the consistency of their opinions with the record as a whole, and the evidence supporting their opinions.  *See Estrella*, 925 F.3d

at 96. An ALJ is not required to discuss every piece of evidence in the record and the ALJ's failure to explicitly mention every conclusion in the physicians' opinions does not mean they were not considered. *See Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"). Moreover, even if the ALJ's decision did not strictly apply the treating physician requirements, the ALJ's decision allows the Court to understand and assess her assessment of the opinions. *See Holler v. Saul*, __ F. App'x __, 2021 WL 1621304, at *2 (2d Cir. 2021) ("[W]here . . . the ALJ provided a detailed explanation for her decision to give less than controlling weight to a treating physician's opinions, which we can easily understand from a review of the [record], the ALJ's failure to explicitly discuss each of the four factors . . . is not per se reversible error.") (summary order); *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (noting that ALJ did not explicitly address treating physician factors, the ALJ provided sufficient reasons for the weight assigned to the treating physician's opinion) (summary order); *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.").

In sum, the ALJ carefully weighed the opinion evidence in the record in accordance with the treating physician rule, and she adequately explained her reasons for not adopting the opinions of Drs. Hoffman and Queenan. Accordingly, remand is not required on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 20) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 16) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

                                                                               _____
                                                                               ELIZABETH A. WOLFORD
                                                                               Chief Judge
                                                                               United States District Court

Dated:       July 20, 2021
               Rochester, New York